CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
OCT 13 2005
JOHN F. CORCORAN, CLERK
BY: /s/ Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

ROBERT E. TYLER,
W. MICHAEL HAGER,
WESLEY L. WRIGHT,
ROBERT E. TINSLEY, JR.,
GENTRY R. P. FERRELL,
METRO FIRE & RESCUE, INC.,

and

ENVIRONMENTAL TECHNOLOGIES, INC.

*Plaintiffs,*

v.

PAUL H. BERGER,

and

BAUM'S CASTORINE COMPANY, INC.

*Defendants.*

CIVIL ACTION NO. 6:05-CV-00030

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Plaintiffs' August 17, 2005 Motion for Remand and Defendants' ensuing August 31, 2005 Motion for Leave to Amend Notice of Removal. The Court has also considered Plaintiffs' August 18, 2005 Motion to Dismiss Counts VI and IX of Defendants' counterclaims. The Court heard arguments on these motions on October 3, 2005.

Defendants did not adequately establish the amount in controversy in the original notice of removal. Although the question is a close one, the Court finds that it is appropriate to

consider allegations contained in the amended notice of removal, which satisfy the Court that the amount in controversy exceeds $75,000. In an order to follow, the Court therefore will deny Plaintiffs' motion to remand. However, because Defendants have alleged the state of residence and not the state of citizenship of the individual Plaintiffs and Defendant, Defendants will be ordered to show cause why this action should not be dismissed for lack of subject matter jurisdiction. Finally, while the Court awaits Defendants' final chance to properly allege removal jurisdiction, it will take under advisement Plaintiffs' motion to dismiss Counts VI and IX of Defendants' counterclaims.

## I. BACKGROUND

The individual Plaintiffs are all Virginia residents[1] and shareholders of corporate Plaintiffs Metro Fire & Rescue, Inc. ("Metro") and Environmental Technologies, Inc. ("ETI") (collectively, "Plaintiffs"). Metro and ETI are Virginia corporations, each with their principal place of business in Virginia. Defendant Paul Berger is a New York resident, and Defendant Baum's Castorine Company, Inc. ("Baum's") is a New York corporation with its principal place of business in New York.

It is undisputed that in an August 1991 letter agreement formalized in October 1991, the parties agreed that Baum's would manufacturer a fire retardant, "Pyrocool," exclusively for Metro, and that Metro would have sole responsibility for marketing the product. Metro in turn agreed to use Baum's as its exclusive supplier of Pyrocool. The 1991 contract also listed prices for Pryocool; stated that these would be affected "only by future materials costs [sic] increases"; required Baum's to provide 10 days' notice of price increases; and provided that Metro would

---

[1] Defendants failed to allege the citizenship—a legal concept distinct from residency—of Plaintiffs or individual defendant Paul Berger in the original and amended notices of removal.

pay research and development expenses. Another provision, now contested, provided that the patents, proprietary information, and future developments related to Pyrocool "will be owned equally" by Mr. Berger and Metro, and stated:

> In exchange for Paul H. Berger assigning all his rights therein to Metro Fire & Rescue, Metro Fire & Rescue will pay to Paul Berger a royalty of $.25 on each gallon of PYROCOOL sold for the first 12 months of the relationship, with an increase to $.75 per gallon in the second year, or as soon as sales exceed 20,000 gallons, whichever occurs first.

[Compl., Ex. A at ¶7].

In September 1992, Mr. Berger assigned to Metro "the entire right, title and interest" in certain patented inventions ("1992 Assignment"), and in June 1994, executed a substantially similar assignment to the individual Plaintiffs ("1994 Assignment"). The 1994 Assignment differed, however, in that it contemplated that "an agreement with Paul Berger for payment of royalties in form similar to that already in effect for the assignment of the product known as Pyrocool A shall be accomplished." [Compl., Ex. C at 2].

Before this action commenced in state court, Defendants had moved to intervene in a Texas litigation involving the Plaintiffs and a third party, Flame Control International, Inc.[2] [Orig. Not. of Rem. Exh. C]. In support of their complaint in intervention, Defendants alleged that Plaintiffs had violated the 1991 contract and the 1992 and 1994 assignments (the "Agreements")[3] in numerous respects, by (1) falling delinquent on payments for Pyrocool; (2) failing to pay royalties; (3) failing to pay research and development costs; and (4) contracting with other suppliers in violation of the exclusive manufacturing provision. They claimed these

---

[2] *Flame Control International, Inc. v. Pyrocool Technologies, Inc. et al.*, No. 3:05-CV-0503-H (N.D. Tex. filed February 2005).

[3] In their complaint in intervention, Defendants referred to the 1991 contract and the 1992 and 1994 assignments collectively as the "Agreement."

violations constituted an anticipatory breach of contract. With respect to the delinquent payments, Defendants submitted a sworn statement of account alleging an account balance of $128,458.58. Next, Defendants alleged that Plaintiffs had fraudulently misrepresented their intention and financial ability to properly develop and promote the patents, and their intention to comply with the exclusive manufacturing arrangement. They also claimed Plaintiffs had breached an implied duty to exploit the patents. Finally, in addition to these contract and fraud claims, Defendants pled that they were entitled to relief under a *quantum meruit* theory and requested a declaratory judgment that (1) as a result of Plaintiffs' breaches of the Agreements, the contract was voidable and they were excused from further performance; and (2) as a matter of law, Plaintiffs had an implied duty to exploit the assigned patents with diligence and had breached this duty.

Except for the sworn statement of account, Defendants did not quantify the damages allegedly caused by Plaintiffs' misrepresentations, failure to properly exploit the patents, or their nonpayment of royalties or research and development costs. [Orig. Not. of Rem. Exh. C 14-17].

On June 7, 2005, the Texas court denied the motion to intervene.

Wasting no time, on June 8, 2005, Defendants filed an original complaint against Plaintiffs in the U.S. District Court for the Northern District of Texas.[4] [Orig. Not. of Rem. Exh. B]. The facts and causes of action alleged, and relief sought, substantially mirrored those in the unsuccessful complaint in intervention described above. Again, Defendants did not attempt to quantify any damages except the sworn account balance of $128,458.58.

The present action was brought by Plaintiffs on June 10, 2005, in the Amherst, Virginia Circuit Court. Referring to the unsuccessful motion to intervene, Plaintiffs allege in their

---

[4] *Berger et al. v. Pyrocool Technologies at al.*, No. 3:05-CV-1174N (filed June 8, 2005).

complaint that Defendants had previously sought "*inter alia*, a declaratory judgment that the 1991 Contract, the 1992 Assignment and the 1994 Assignments 'be declared voidable, and that [Respondents] be excused from further performance under [them].'" [Compl. ¶23]. Plaintiffs note that because Defendants had not been permitted to intervene, the ongoing validity of the Agreements is the subject of an unresolved dispute and the matter is ripe for declaratory relief. Further, Plaintiffs allege a course of performance and dealing between the parties that is in important respects contrary to the Agreements. In Count I, Plaintiffs request a declaratory judgment that the terms of the Agreements "as implemented and modified by the course of performance and course of dealing that existed between the parties" are valid and enforceable, and in Count II, they seek prospective injunctive relief prohibiting Defendants from selling Pyrocool to third parties.

Service of process of this complaint became effective on June 30, 2005, and on July 28, 2005, Defendants timely filed a notice of removal in this Court citing 28 U.S.C. §§ 1332, 1441, 1446 and 1447 as jurisdictional grounds. Also on July 28, 2005, Defendants filed an answer and asserted counterclaims substantially identical to the claims they had previously asserted in the April 11, 2005 complaint in intervention and the June 9, 2005 complaint.[5]

Although Defendants imperfectly alleged diversity of citizenship in the notice of removal, in that they alleged the individual Plaintiffs' and Paul Berger's states of residence and not their

---

[5] On July 29, 2005, Defendants moved to have their June 8, 2005 original complaint dismissed pursuant to Fed. R. Civ. P. 41(a)(1), and the Texas district court accordingly dismissed the case without prejudice on August 4, 2005.

5

states of citizenship, Plaintiffs did not object to this imperfection.[6] Instead, Plaintiffs move for remand on the ground that Defendants did not properly allege that the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II. DISCUSSION

To remove an action from state court, a defendant must file a notice of removal containing a short and plain statement of the grounds for removal. 28 U.S.C § 1446(a). Defendants allege removal solely on diversity of citizenship grounds, and were thus obligated to allege, *inter alia*, complete diversity of citizenship and an amount in controversy exceeding $75,000 exclusive of interest and costs. 28 U.S.C. §§ 1332, 1441(a),(b).

The burden of establishing that a district court would have had original jurisdiction—the prerequisite for removal established by 28 U.S.C. § 1441—is placed upon the party seeking removal. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). If a Plaintiff (or the court *sua sponte*) challenges the court's removal jurisdiction, district courts in the Fourth Circuit, and many Courts of Appeals, have held that the defendant bears the burden of proving jurisdiction by a preponderance of the evidence. *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004); *Dash v. Firstplus Home Loan Trust*, 248 F. Supp. 2d 489, 497 (M.D.N.C. 2003); *see* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3725 (3d ed. 1998 & 2005 Supp.)(collecting cases).

### A. Sufficiency of Jurisdictional Allegations in the Original Notice of Removal

---

[6] Nonetheless, the Court has an independent duty to ensure that the case was properly removed, 28 U.S.C. § 1447(c), and thus will order Defendants to show cause why it should not dismiss this case for lack of subject matter jurisdiction.

6

Plaintiffs seek only declaratory and injunctive relief, so their complaint furnishes no evidence of the amount in controversy. Thus, in the original notice of removal, Defendants cite (1) the counterclaims stated in their answer; (2) the June 8, 2005 complaint filed against Plaintiffs in Texas district court; and (3) the April 11, 2005 complaint in intervention also filed Texas district court to support their allegation that the amount in controversy exceeds $75,000. [Orig. Not. of Rem. ¶6].

### *1. Defendants' counterclaims cannot be used to establish the amount in controversy*

Plaintiffs argue that Defendants' own permissive counterclaims cannot be used to establish an element of removal jurisdiction.[7] Plaintiffs also stress that Defendants first filed their counterclaims in federal court, after removal had been effected. Because a case must be fit for federal adjudication at the time the removal petition is filed, they argue, a counterclaim that did not exist until after the case was removed cannot possibly establish the basis of removal.

The Court finds both arguments persuasive, but will focus on the second. Authorities agree that the elements of diversity jurisdiction must exist as of the time of removal. *See, e.g., Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000), *cert. denied,* 532 U.S. 953 (2001); *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002); *see* Wright, Miller, & Cooper, *supra*, § 3725. Defendants filed their petition for removal on July 28, 2005, and that same day filed their answer and counterclaims. Whichever paper was literally handed

---

[7] All counterclaims are permissive under Virginia law. Va. Code Ann. § 16.1-88.01. Defendants cannot put the cart before the horse by alleging that their counterclaims are compulsory under Fed. R. Civ. P. 13(a) and therefore count towards the amount in controversy, when a proper showing of removal jurisdiction must be established before the federal rules even apply. *Bryant Elec. Co. v. Joe Rainero Tile Co.*, 84 F.R.D 120, 127 (W.D. Va. 1979). Authorities agree that permissive counterclaims may not be used to establish the amount in controversy. *Bryant Elec. Co.*, 84 F.R.D at 124; *see* Wright, Miller, & Cooper, *supra*, § 3725.

7

over first is of no importance, because removal had to occur before Defendants could properly file an answer in this Court. Plaintiff therefore reasons correctly that counterclaims that did not exist at the time of removal cannot be used to establish the amount in controversy.

### 2. Defendants' June 8, 2005 original complaint and April 11, 2004 complaint in intervention do not establish the amount in controversy

Defendants also cited—and attached as exhibits to the notice of removal—the June 8, 2005 original complaint and the April 11, 2005 complaint in intervention to establish the jurisdictional threshold. As described above, these complaints are substantially identical and assert various contract, tort, and equitable causes of action. The question therefore remains whether these papers show that the amount in controversy *in this matter* exceeds $75,000.

In actions seeking declaratory and/or injunctive relief, the amount in controversy is measured "by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). This value is properly judged from the viewpoint of either party to the litigation. *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568 (4th Cir. 1964). In *Lally*, defendant automobile insurer sought a declaratory judgment that its liability was limited to $10,000 and not $30,000 as the insured claim. *Id.* at 569. The court found that the amount in controversy was "the pecuniary result to either party which the judgment would produce," which was a maximum of $30,000. *Id.*

Thus, it is important to specify exactly what relief Plaintiffs seek to understand what evidence might be relevant to its pecuniary value. Plaintiffs seek (1) a declaration that the Agreements are valid and enforceable, *as modified by* the course of the parties' performance, and (2) prospective injunctive relief prohibiting the Defendants from selling products covered by the

8

Agreements to third parties. With respect to the contract modifications, Plaintiffs seek a declaration that the royalty provisions in the 1991 and 1994 contracts are not and have never been effective, and that Plaintiffs need not pay their account balance in full immediately but may instead carry the balance for an unspecified time period.

The pecuniary value to Plaintiffs of winning the requested relief is the sum of: (1) expected future profits[8] attributable to a continued exclusive relationship with Defendants[9] and to their exploitation of intellectual property rights conferred by the assignments; (2) predicted savings from postponing payment of their account balance, which likely involves the time value of money or their cost of borrowing; and (3) the value of past and future royalties they would be relieved from paying. The pecuniary result to Defendants of losing the case is the sum of: (1) the difference between the profits they would earn under the Agreements and the profits they would otherwise earn if free to pursue relationships with other buyers and to exploit the intellectual property themselves; (2) the loss attributable to the unspecified delay in Defendants' payment of the account balance, which reflects the time value of money or opportunity cost of delayed payment; (3) loss of past due and future royalty payments.

Because the complaint sheds no light on the amount in controversy, the court must look to the notice of removal and the record as a whole. *Thompson v. Gillen*, 491 F. Supp. 24, 27 n.4 (E.D. Va. 1980); *see* Wright, Miller, & Cooper, *supra*, § 3725. Nothing in the state court record adds to what Defendants attached to their original notice of removal, so the Court can focus

---

[8] Profits, not some measure of revenues or cash flow, are the appropriate pecuniary measure. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278-79 (1936).

[9] This also reflects the value to Plaintiffs of the requested injunction, as the injunction seeks to preserve the exclusivity of the parties' relationship.

9

solely on the June 8, 2005 and April 11, 2005 complaints. Neither of these supply evidence as to the value to either party of the intellectual property or of continuing—or terminating—the exclusive manufacturing relationship: The sworn statement of accounts show only historical sales, not profits. Because Plaintiffs request only that payment be deferred for an unspecified period, not for total relief from their payment obligation, the $128,458.58 figure is not relevant to the amount in controversy absent evidence showing the benefit to Plaintiffs or the cost to Defendants of deferred payment.

Next, Defendants have not provided the Court sufficient direct or indirect evidence to deduce the value of past or future royalties. If Plaintiffs prevail, Defendants' claim for past royalties owed would be extinguished, U.S. Const. art. IV, § 1, as would their right to future royalties. The 1991 Agreement specifies that Plaintiffs would pay Mr. Berger $0.25 per gallon of Pyrocool sold in the first 12 months with an increase to $0.75 per gallon in the second year, or as soon as sales exceed 20,000 gallons, whichever occurred first. However, Defendants do not supply evidence as the amount of past due royalties. Defendants' sworn accounts list only unpaid invoices in dollar amounts; they do not give the Court figures as to the number of gallons previously sold or the cost per gallon.[10] The Court cannot estimate the value of past due or future royalties without any historical data as to the number of gallons of Pyrocool heretofore sold.

**B. Defendants' Amended Notice of Removal**

---

[10] The 1991 Agreement specifies that Pyrocool was to be sold for $4.35 per gallon when sold in 5 gallon containers, and $3.31 per gallon if sold in the 55 gallon size. Defendants have not offered the Court current prices. Even assuming all Pyrocool was sold at $3.31 per gallon without any price increases over the years, at best Plaintiff only supplies evidence of ($128,458.58/$3.31)*($0.75) or $29,107 in unpaid royalties.

10

Since the original notice of removal and Plaintiffs' motion to remand, Defendants have filed an amended notice of removal which contains evidence that satisfies the Court that the amount in controversy is greater than $75,000, exclusive of interest and costs.[11] Plaintiffs strenuously argue, however, that the Court should refuse to allow amendments of the type and scope offered by Defendants *after* expiration of the 30-day removal period.

A defendant is required to file a petition of removal within 30 days after service of the complaint. 28 U.S.C. § 1446. By leave of court, a defendant may amend a notice of removal to cure "[d]efective allegations of jurisdiction." 28 U.S.C. § 1653. Authorities agree that a defendant may freely amend within the 30-day period. *See, e.g., Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945 (11th Cir. 2000); *see* Wright, Miller, & Cooper, *supra*, § 3733. However, in cases involving amendments proposed *after* expiration of the 30-day period, Courts have reconciled the tension between the 30-day limit set forth in 28 U.S.C. § 1446(b) and the permissive terms of 28 U.S.C. § 1653 by drawing a distinction between those amendments that would supply *wholly missing* jurisdictional allegations and those that would merely expand upon and amplify *previously articulated* grounds. *Nutter v. New Rents, Inc.*, 945 F.2d 398, *2 (4th Cir. 1991) (unpublished opinion)[12]; *Muhlenbeck v. KI, LLC*, 304 F.Supp.2d 797, 799 (E.D. Va. 2004); *Thompson v. Gillen*, 491 F. Supp. 24, 27 (E.D. Va. 1980); *see* Wright, Miller, & Cooper, *supra*,

---

[11] At oral argument, Plaintiffs did not contest the sufficiency of the allegations in the amended notice of removal, but instead urged their position that Defendants cannot supply new allegations after the 30-day period has expired. The court will discuss below why the allegations contained in the amended notice of removal establish an amount in controversy exceeding $75,000.

[12] In this unpublished opinion, the Fourth Circuit stated, "We...apply the majority rule that an amendment which merely perfects a technically defective jurisdictional allegation in a timely filed removal petition may be allowed after the 30-day removal period."

11

§ 3733.

Thus in *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Louth*, 40 F. Supp. 2d 776, 283 (W.D. Va.) and in *Fenton v. Food Lion, Inc.*, 2002 WL 1969662 * 6 (W.D. Va. 2002), the courts granted motions to remand where defendants had failed to file a notice of removal alleging joinder of all co-defendants, a jurisdictional prerequisite to removal. By contrast, the courts in *Muhlenbeck* and *Nutter* permitted amendment and denied remand where the defendants had alleged diversity of citizenship in their original notice of removal, but had failed to properly allege an LLC's citizenship properly and a corporate defendant's principal place of business, respectively. Still other cases are on all fours with the Court's decision to order Defendants to show cause—rather than to dismiss the case *sua sponte*—so that they may correct their allegation of the individual parties' states of *residency* rather than *citizenship*, where Defendants did make a general allegation of complete diversity in the original notice of removal. *Ginn v. Stegall*, 132 F.R.D. 166 (E.D. Va. 1990); *Camacho v. Cove Trader, Inc.*, 612 F.Supp. 1190, 1192 (E.D. Pa. 1985); *cf. Thompson v. Gillen*, 491 F. Supp. 24, 27 (E.D. Va. 1980).

Defendants did allege that the amount in controversy is greater than $75,000, and Plaintiffs do not even try to argue that this allegation is "wholly missing." Instead, Plaintiffs emphasize that removal jurisdiction is strictly construed, *Mulcahey*, 29 F.3d at 151; point to precedents holding that only "technical" allegations are allowed after the 30-day period;[13] and argue that the numerous paragraphs of new allegations concerning the amount in controversy contained in Defendants' amended notice of removal are more substantive than technical.

---

[13] *Fenton*, 2002 WL 1969662 at * 7; *see also Bellone v. Roxbury Homes, Inc.*, 748 F. Supp. 434, 36 (W.D. Va. 1990); *Muhlenbeck v. KI, LLC*, 304 F. Supp. 2d 797, 799 (E.D. Va. 2004).

12

The Court believes that the technical/substantive distinction that Plaintiffs urge is misplaced in the context of amount in controversy allegations. In *KVOS v. Associated Press*, 299 U.S. 269 (1936), the Court considered the sufficiency of a plaintiff's "general statement" that the amount in controversy exceeded the then $3,000 threshold. *Id.* at 277. Plaintiff sought only injunctive relief. The court found that this bare allegation would be sufficient "unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court sua sponte or upon the defendant's motion." *Id.* The Court further explained, however, that when the defendant challenges the amount in controversy in a sufficient manner, the plaintiff bears the burden of supporting the amount in controversy allegation "by competent proof." *Id.* at 278.

Plaintiffs do not address *KVOS*. Instead, they rely on a general policy in favor of strict construction of removal statutes and authorities that forbid all but "technical" amendments or removal petitions. The Court is mindful that removal statutes are to be strictly construed, but nothing in the requirement that defendants file a "short and plain statement"[14] of the grounds for removal supports an enhanced pleading requirement in the removal context. The Court also believes that Defendants should not be penalized for saying too much: the evidence cited in the original notice of removal may not have substantiated the amount in controversy allegation, but neither did it "qualify or detract" from the allegation to such a degree that Defendants should be denied leave to amend.

Further, the Court notes that the focus on "technical" amendments may be appropriate

---

[14] 28 U.S.C. § 1446(a).

13

where allegations of complete diversity of citizenship and complete joinder of defendants in removal are concerned, but is misplaced where amount in controversy allegations are concerned. This is true because unlike a party's state of citizenship or the existence of complete joinder of defendants, the amount in controversy often goes to the merits of the case is likely to be a fact-smothered inquiry. Thus the tradition of allowing sparse amount in controversy allegations, and burdening a litigant to cite specific supporting evidence only if properly challenged by court or by opponent. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *KVOS v. Associated Press*, 299 U.S. at 277-78. The Court sees no reason to stray from these principles in the removal context, and its position is well-supported by authority.[15] *See, e.g., United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meridan Square, Inc.*, 30 F.3d 298, 306 (2d Cir. 1994); *Gwyn v. Wal-Mart Stores, Inc.*, 955 F.Supp. 44, 46 (M.D.N.C. 1997); *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753 (E.D. Mich.

---

[15] The Court cannot agree, however, with Defendants' contention that *Willingham v. Morgan*, 395 U.S. 402 (1969) supports a generalized principle that "later-filed affidavits may be considered by a court in ascertaining whether sufficient jurisdictional grounds have been pled in a removal petition." (Def. Opp. Remand at 12). In *Willingham*, the Supreme reviewed the Tenth Circuit's decision to remand a case removed under 28 U.S.C. § 1442(a) because defendants had insufficiently supported their allegations that they had acted under color of office as employees of the United States. *Id.* at 403-04. Despite its view that such evidence "should have appeared in the petition for removal," the Court decided that "for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Id.* at 408 n.3. This leniency must be understood, however, only to apply to a very special removal provision distinct from § 1441:
> [T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a 'federal interest in the matter,' the very basic interest in the enforcement of federal law through federal officials. Viewed in this context, the ruling of the court below cannot be sustained. The federal officer removal statute is not 'narrow' or 'limited.'

*Id.* at 406.

14

Case 6:05-cv-00030-SGW-mfu    Document 34    Filed 10/13/05    Page 14 of 17    Pageid#: 518

1990). *But see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).[16]

### 3 Defendants' amended notice of removal establishes that the amount in controversy exceeds $75,000.

Defendants submit Plaintiffs' own estimates of the value of the intellectual property they seek to protect, as evidenced by pleadings Plaintiffs filed in an unrelated litigation, to establish th amount in controversy.

The amended notice of removal shows that Flame Control International, Inc. ("FCI") sued ETI, Metro, Pyrocool Technologies, Inc.,[17] and Robert Tinsley ("Pyrocool Defendants") in a matter filed in March 2005 in the District Court of Dallas County ("FCI Litigation"). [Amend. Not. of Rem. Exh. 2-A]. FCI alleged that the Pyrocool Defendants had actively solicited it to be their marketing and distribution partner in accordance with a verbal partnership agreement that the Pyrocool Defendants had breached. *Id.* FCI further contended that in reliance on the Pyrocool Defendants' representations, it had actively promoted their products and developed a multi-million dollar business opportunity with Mitsubishi International Corporation that would bring products and technology owned by Pyrocool and ETI to the Japanese market. *Id.*

The Pyrocool Defendants removed to the District Court for the Northern District of Texas on March 14, 2005 and listed the remaining plaintiffs in this case—Robert Tyler, Michael Hagar, Gentry Ferrell, and Wesley Wright—as "interested persons." [Amend. Not. of Rem. Exh. 2-C, Attach. C]. On March 28, 2005, the Pyrocool Defendants filed an Answer and Counterclaim.

---

[16] The Ninth Circuit's position is unclear in light of its conflicting decisions in *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) and *Cohn v. Petsmart*, 281 F.3d 837 (9th Cir. 2002).

[17] The Pyrocool Defendants explained in their answer and counterclaim that both ETI and Metro do business under the fictitious name of Pyrocool Technologies, Inc. [Amend. Not. of Rem. Exh. 2-D ¶7].

15

Counterclaim Count V alleged that FCI had tortiously interfered with an existing contract with their sole supplier, Baum's, and that

> Absent such intentional misconduct by FCI, Counterclaim Plaintiffs would have continued in their contractual relationship with Baum's in the same manner as they had for the previous twelve years. As a direct and proximate result of FCI's conduct, Counterclaim Plaintiffs have suffered damages, including but not limited to loss of income and increased costs, in the amount of five hundred thousand dollars ($500,000.00).

[Amend. Not. of Rem. Exh. 2-D, Exh. D ¶¶96-97]. Similarly, the Pyrocool Defendants alleged that FCI tortiously interfered with their prospective business relationship with Mitsubishi, and as a result lost the opportunity to sell its products at a significant profit. They estimated damages of $5,000,000.00 in lost profits. [Amend. Not. of Rem. Exh. 2-D, Exh. D ¶¶103-04]. The products and rights that the Pyrocool Defendants hoped to sell Mitsubishi appear to be the same covered by the 1992 and 1994 Assignments, which are in dispute in the present matter. [Amend. Not. of Rem. Exh. 2-D, Exh. D ¶¶9-10]. The $5,000,000 figure thus reflects the pecuniary value to Plaintiffs of having the 1992 and 1994 Assignments declared valid and enforceable.

The Court finds that the affidavit and pleadings attached to the amended notice of removal provide "competent evidence"—and show by a preponderance of the evidence—that the pecuniary value to Plaintiffs' of success on the merits is greater than $75,000, exclusive of interest and costs.

## CONCLUSION

Although the evidence supplied in Defendants' original notice of removal did not support their amount in controversy allegation, the Court believes that it is appropriate to consider the evidence supplied the amended notice of removal. This evidence clearly demonstrates that the amount in controversy exceeds $75,000. Therefore, Plaintiffs' motion to remand will be denied.

16

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED: /s/ Hanna C. Moon
U.S. District Judge

10/13/2005
Date